| | | |
|---|---|---|
| Vernon Stewart, | ) | C/A No. 0:18-1948-CMC-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Andrew Saul, Commissioner of Social | ) | |
| Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |
| —————————————————— | ) | |

 This social security matter is before the court for a Report and Recommendation pursuant to Local Civil Rule 83.VII.02 (D.S.C.).  The plaintiff, Vernon Stewart, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB").  Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

## SOCIAL SECURITY DISABILITY GENERALLY

 Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 404.1505(a); see also

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew Saul is substituted as the named defendant because he became the Commissioner of Social Security on June 17, 2019.



<u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1973). The regulations require the Administrative Law Judge ("ALJ") to consider, in sequence:

(1)     whether the claimant is engaged in substantial gainful activity;

(2)     whether the claimant has a "severe" impairment;

(3)     whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)     whether the claimant can perform his past relevant work; and

(5)     whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[2]  If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step.  <u>Id.</u>

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments.  Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner.  To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy.  42 U.S.C. § 423(d)(2)(A); <u>see also</u> <u>McLain v. Schweiker</u>, 715 F.2d 866, 868-69 (4th Cir. 1983); <u>Hall v. Harris</u>, 658 F.2d 260, 264-65 (4th Cir. 1981); <u>Wilson v. Califano</u>, 617 F.2d 1050, 1053 (4th Cir. 1980).  The Commissioner may carry this burden by obtaining testimony from a vocational expert.  <u>Grant v. Schweiker</u>, 699 F.2d 189, 192 (4th Cir. 1983).

---

[2] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances.  20 C.F.R. § 404.1520(h).

PJG

# ADMINISTRATIVE PROCEEDINGS

In January 2017, Stewart applied for DIB, alleging disability beginning August 15, 2014. Stewart's application was denied initially and upon reconsideration, and he requested a hearing before an ALJ. A hearing was held on January 9, 2018, at which Stewart, who was represented by J. Leeds Barroll, IV, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on April 3, 2018 finding that Stewart was not disabled from August 15, 2014 through the date of the decision. (Tr. 13-27.)

Stewart was born in 1964 and was fifty years old on his alleged disability onset date. He has a college education and has past relevant work experience as a training coordinator and as a human resource worker with the United States Army. (Tr. 219.) Stewart alleged disability due to back issues, neck stenosis, and left leg radiculopathy. (Tr. 218.)

In applying the five-step sequential process, the ALJ found that Stewart had not engaged in substantial gainful activity since his alleged onset date of August 15, 2014. The ALJ determined that Stewart's degenerative disc disease of the lumbar and cervical spines, bilateral pes planus, gout, post-traumatic stress disorder, depression, generalized anxiety disorder, and intermittent explosive disorder were severe impairments. However, the ALJ found that Stewart had not had an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 ("the "Listings"). The ALJ found, after consideration of the entire record that Stewart retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) with additional restrictions of lifting, carrying, pushing, and pulling 20 pounds occasionally and less than 10 pounds frequently; standing and/or walking for six hours in an eight-hour work day; and, sitting for six hours in an eight-hour work day; no climbing of ladders, ropes, or scaffolds; occasional operation of foot controls, bilaterally, overhead reaching with the left upper extremity, stooping, kneeling, crouching, crawling, balancing, climbing of stairs and ramps, and exposure to hazards. The claimant is limited to simple,

routine tasks and simple work-related decisions but is able to maintain concentration, persistence, and pace for periods of two hou[rs], perform activities within a schedule, maintain regular attendance, and complete a normal workday and workweek. The claimant can have occasional interaction with the general public, occasional close, "team-type" interactions with coworkers, and tolerate occasional changes in routine work setting.

(Tr. 17.) The ALJ found that Stewart was unable to perform any past relevant work, but that considering Stewart's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Stewart could perform. Therefore, the ALJ found that Stewart had not been disabled from the alleged onset date of August 15, 2014 through the date of the decision.

The Appeals Council denied Stewart's request for review on May 16, 2018, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-5.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017); Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589; see also Pearson v. Colvin, 810 F.3d 204, 207 (4th Cir. 2015). In reviewing the evidence, the court may not

PJG

"undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its]

judgment for that of the [Commissioner]." Craig, 76 F.3d at 589; see also Hancock v. Astrue, 667

F.3d 470, 472 (4th Cir. 2012). Accordingly, even if the court disagrees with the Commissioner's

decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at

775.

## ISSUES

Stewart raises the following issues for this judicial review:

A.   The ALJ's decision discrediting multiple treating medical sources was
     deficient in its discussion of the regulatory five-factor scheme required to
     deprive numerous treating medical sources of controlling weight.

B.   The ALJ misapplied SSR 16-3p[] in his discredit of the claimant's symptoms.

C.   The ALJ failed to discuss the medically determinable impairment of
     prostatitis.

(Pl.'s Br., ECF No. 7.)

## DISCUSSION[3]

### A.   Opinion Evidence

Stewart first argues that the ALJ erred in evaluating the opinion evidence from Larry Dillard,

a physician assistant, and Dr. Phillip J. Michels, a psychologist. Stewart also argues that the ALJ

erred in evaluating the disability rating of the Department of Veterans Affairs ("VA").

---

[3] The court notes that numerous social security regulations and social security rulings (SSRs) have changed effective March 27, 2017. However, these changes specifically state that they are applicable to claims filed *on or after* March 27, 2017. See, e.g., 20 C.F.R. §§ 404.1513, 404.1527. Because the instant claim was filed prior to that date, all references in the instant Report and Recommendation are to the prior versions of the regulations which were in effect at the time Stewart's application for benefits was filed, unless otherwise specified.

PJG

1.      **Medical Source Opinions**

The law applicable to Stewart's application provides that regardless of the source, the Commissioner will evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See id. However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). Instead, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). Any other factors that may support or contradict the opinion should also be considered. 20 C.F.R. § 404.1527(c)(6). In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Further, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Id. (quoting Craig, 76 F.3d at 590).

Moreover, "other sources," such as physicians' assistants, are not "acceptable medical sources." 20 C.F.R. § 404.1513(a), (d)(1). These other sources do not command controlling weight in the same manner as acceptable medical sources. 20 C.F.R. § 404.1513(d). Although an other source cannot provide evidence to establish an impairment, evidence from other sources, such as physicians' assistants, may be used to show the severity of the claimant's impairments and how it affects his ability to work. Id. In weighing these opinions, the ALJ is instructed to apply the same

PJG

factors applicable to treating medical sources; however, the regulations acknowledge that "not every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source or from a nonmedical source depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1).

With regard to the opinions from Dillard and Dr. Michels, the ALJ found as follows:

Mr. Dillard, PA-C reported on January 23, 2017, it was his medical opinion as a South Carolina Licensed Health Care Provider that he was "100% sure that it is more likely, than not likely, the claimant's medical conditions debilitates him to the point that he is unable to obtain or sustain any type of gainful employment, at this time or any time in the future." He further cautioned the claimant "[d]o not think about trying to obtain or sustain any type of gainful employment . . . ." It is also his medical opinion as well as a medical fact that the claimant's cervical spondylosis with DJD and bilateral upper extremity radiculopathy and lumbar DJD with bilateral lower extremity radiculopathy alone precludes sedentary employment at this time or any time in the future. Mr. Dillard reported his opinion was based off of over 20 years of medical experience, medical facts, and [his] medical examination showing that he is unable to sit, stand, walk, crouch, or crawl for more than five minutes at one sitting, without changing positions or sitting to take a break or raise his arms above his head for any length of time without severe pain and cannot lift more than 10 pounds, climb, stoop, or kneel, or concentrate for two hours on a reliable and consistent basis; consistently complete task for two consecutive hours out of an eight-hour day on a reliable basis; or raise his arms above his head for any length of time without severe pain. (Exhibit 2F).

In a questionnaire . . . dated January 24, 2017, Mr. Dillard reported he treated the claimant both medically and mentally. From an orthopedic standpoint, Mr. Dillard reported the claimant suffered from back pain with bilateral leg radiculopathy; gout affecting his joints with four to five debilitating attacks requiring six to eight weeks of rest per year; and neck/back condition with upper and lower extremity radiculopathy with inability to sit, stand, or walk for more than five minutes without changing positions. Mr. Dillard farther reported the claimant lived with daily pain that ranged from 8 – 10 on the 10-point pain scale, depending upon medication and activity; could not walk, stand, or lift more than 10 pounds for two hours out of an eight-hour workday; and the claimant's major depressive disorder affected his thinking, judgment, pace, and concentration and caused him to be occupationally and socially impaired. It was Mr. Dillard's opinion the claimant was unable to perform any work-related activities on a full-time basis due to inability to stoop, knee[l], crouch, crawl, lift more than 10 pounds, sit/stand more than five minutes without change positions, or raise arms above shoulder level (Exhibit 14F).

Mr. Dillard's opinions are given little weight. Based on the review of the record, Mr. Dillard['s] treatment contacts are very limited. (Exhibit 2F). I also note that although Mr. Dillard alleges h[e] is responsible for treating the claimant for the "majority of his medical/mental conditions," the evidence does not substantiate this. The extreme limitations given by Mr. Dillard in Exhibits 2F/5 and 14F are not only inconsistent with the record as a whole but also inconsistent with Mr. Dillard's own treatment notes in the record. Furthermore, they are at odds with the claimant's own reported abilities and function. Finally, Mr. Dillard's "warning" to the claimant to "not think about trying to obtain or sustain any type of gainful employment" strains all credulity in light of the evidence of record.

On February 17, 2017, Dr. Michels stated he was the claimant's treating clinical psychologist and indicated he treated the claimant for anger, anxiety, PTSD, and sleep onset and termination insomnia, which he reported were marked. It was his opinion the claimant had the ability to sustain concentration or pace for two consecutive hours[4] and he would not he able to sustain a full-time, 40 hours per week, and eight hours per day job on a reliable and consistent basis. Dr. Michels further indicated the claimant's impairments of PTSD, intermittent explosive disorder, and panic disorder meet the Listings of 12.06, 12.08, and 12.15 with anxiety disorder symptoms of restlessness, irritability, and sleep disturbance; panic disorder with symptoms of disproportionate fear or anxiety about at least two different situations; personality and impulse control disorders with recurrent, impulsive, and aggressive behavioral outbursts and trauma; and stressor-related disorders with exposure to actual or threatened death, serious injury or violence, subsequent involuntary re-experiencing of the traumatic event, avoidance of external remind[er]s of the event, disturbance in mood and behavior, and increases in arousal and reactivity with marked functioning in interaction with others including supervisors, co-workers, or the public; and moderate limitation in adapt or manage oneself, regular emotions, control behavior, and maintain well-being in a work setting (Exhibit 9F).

In an undated statement, Dr. Michels indicated he last saw the claimant on July 13, 2017, for PTSD, intermittent explosive disorder, and insomnia; however, psychiatric care was not recommended. The claimant's mental status evaluation indicated the claimant was oriented with racing thoughts, obsessive thought content, normal and angry mood/affect, and good attention, concentration, and memory and he had good ability to complete[] basi[c] activities of daily living, related to others, and complete simple and routine tasks and an adequate ability to complete complex tasks. On December 5, 2017, Dr. Michels reported his opinion was essentially the same (Exhibits 7F and 17F).

---

[4] As pointed out by Stewart, Dr. Michels actually indicated that Stewart could not sustain concentration or pace for two consecutive hours. However, in light of the totality of the record, Stewart has failed to demonstrate that this error was harmful.



Dr. Michel's opinion is also given little weight as it is also inconsistent with, nor supported by his own records, the remaining evidence of record, and the claimant's own reports of his abilities and functionality.

(Tr. 24-25) (first alteration in original).

Here, Stewart argues that the ALJ failed to properly apply the applicable factors in weighing these opinions. Upon thorough review of the ALJ's decision and the record, the court disagrees and concludes that it is clear that the ALJ applied the relevant factors in evaluating the opinion evidence. Further, Stewart has failed to demonstrate that the ALJ's evaluation of these opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted); Dunn v. Colvin, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' . . . or has failed to give a sufficient reason for the weight afforded a particular opinion[.]") (internal citations omitted). As an initial matter, based on the regulations applicable to Stewart's application, the ALJ properly and explicitly considered the nature and frequency of each source's treatment relationship with Stewart as evidenced by the record and each source's specialty. See 20 C.F.R. § 404.1527(c). Moreover, the decision reflects that the ALJ offered reasonable bases in giving these opinions little weight. A review of the ALJ's decision as a whole reveals that the ALJ summarized and considered Stewart's medical records and reasonably found that the medical records did not support the extreme limitations opined. See 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for

an opinion, the more weight we will give that opinion."); 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion."). To the extent that these sources simply opined that Stewart was disabled, the issue of whether a claimant is disabled is reserved to the Commissioner, and opinions by medical sources on that point are not entitled to special significance. See 20 C.F.R. § 404.1527(d).

Based on the foregoing, Stewart has failed to demonstrate that the ALJ's conclusions regarding these opinions are unsupported by substantial evidence. In fact, it is clear that the ALJ, as part of his duties in weighing the evidence, properly considered these opinions in accordance with the applicable factors and legal authority.[5] See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence). Thus, the court finds that Stewart has not shown that the ALJ's decision with regard to the opinion evidence was unsupported by substantial evidence or reached through application of an incorrect legal standard.

**2.      VA Disability Rating**

Stewart also challenges the ALJ's evaluation of his VA disability rating. In Bird v. Astrue, 699 F.3d 337 (4th Cir. 2012), the United States Court of Appeals for the Fourth Circuit addressed

---

[5] Although the Commissioner suggests that these sources are not treating sources but rather sources Stewart saw solely for the purpose of obtaining a report for his claims, the court observes that such a position was not taken by the ALJ and, in fact, the ALJ appears to have accepted the sources' representations that they treated Stewart. Cf. 20 C.F.R. § 404.1527(a)(2) ("We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but solely on your need to obtain a report in support of your claim for disability."). The ALJ appears to have instead focused on the inconsistency and lack of support in the few records submitted.

for the first time the weight that the Social Security Administration must afford to a Department of

Veterans Affairs disability rating. Specifically, the Bird Court held that

> in making a disability determination, the SSA must give substantial weight to a VA
> disability rating. However, because the SSA employs its own standards for
> evaluating a claimant's alleged disability, and because the effective date of coverage
> for a claimant's disability under the two programs likely will vary, an ALJ may give
> less weight to a VA disability rating when the record before the ALJ clearly
> demonstrates that such a deviation is appropriate.

Bird, 699 F.3d at 343. The Fourth Circuit recently extended the rationale in Bird to state agency

determinations. See Woods v. Berryhill, 888 F.3d 686, 692 (4th Cir. 2018). Importantly, the Woods

Court further elaborated on Bird's requirement that the record "clearly demonstrate" that a deviation

from another agency's disability determination is appropriate by explaining that "an ALJ must give

'persuasive, specific, valid reasons for doing so that are supported by the record.' " Id. (quoting

McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002)). The Woods Court offered examples

of these reasons, stating that "an ALJ could explain which aspects of the prior agency decision he

finds not credible and why, describe why he finds other evidence more credible, and discuss the

effect of any new evidence made available after [the agency] issued its decision." Id.

Acknowledging that the list is not exclusive, the Woods Court explained that "the point of this

requirement—and of these examples—is that the ALJ must adequately explain his reasoning;

otherwise, we cannot engage in a meaningful review." Id. at 692-93.

Here, the ALJ acknowledge the VA disability rating, as well as the requirements following

Bird. Specifically, the ALJ found as follows:

> Although SSA will accept another agency's disability determination as evidence of
> a claimant's condition, that agency's decision is not binding on the SSA. Bird v.
> Commissioner, 699 F.3d 337, 343-344 (4th Cir. 2012) citing 20 C.F.R. 404.1504,
> 1512(b)(5). The ruling in Bird holds that a VA disability must be accorded
> substantial weight unless the record demonstrates that such a deviation is appropriate.
> The record in this case mandates deviation.

On July 9, 2015, the claimant was given a 90% disability rating due to service-connected disabilities and on June 15, 2016, the claimant's disability rating increased to 100% effective February 8, 2016 (Exhibits 6D, 4F, and 13F). The VA assigns percentages to impairments, then uses a combined rating table that considers the effects of the conditions. The Social Security Administration defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 20 C.F.R. § 404.1505 (2013). A VA rating of 90% to 100% is not readily transferable to the Social Security Administration's definition of disability. A 90% or 100% impairment rating certainly indicates a condition imposing more than minimal work related limitations, but it does not necessarily follow that it is of sufficient severity to preclude all substantial gainful activity for a continuous period of 12 months or longer. Even accepting the impairment rating, I cannot assume that severity is static, nor can I assume a 90% to 100% disability rating equals disability as defined by the Social Security Act.

As outlined above, C & P examinations and ratings support some work-related restrictions; I find the ratings are not consistent with the actual medical evidence such that the use of a cane for gout instead of back issues and lack of medical surgeries, procedures, or prescribed pain medications to control the claimant's varied complaints of pain. However, the claimant has VA ratings for certain conditions that cause no work-related impairments. For example, the claimant has a 30% rating for COPD and 10% for tinnitus. There is no evidence in the record that the claimant has received any care or takes any medications for these conditions. (Exhibits 15E, 4F, 6F, 11-12F).

The seminal difference between the disability adjudication process in the VA system and SSA's determination of disability is the SSA focus on functional capacity and functional limitations from impairments. Whereas the VA assigns percentages of disability from a published chart, without consideration of the impact of the rated component impairment on the claimant's ability to perform basic work tasks, SSA focuses directly upon such functional limitations and their impact on the ability to perform past work, as well as other jobs existing in the national economy. I specifically addressed each of the component impairments rated by the VA, and assigned appropriate limitations for each one determined to be severe during the relevant period. For these reasons, I accord the VA disability rating only limited weight.

(Tr. 23.)

Contrary to Stewart's arguments, the court finds that the ALJ has sufficiently explained why

the records demonstrates accordingly limited weight to the VA disability rating in accordance with



requirements outlined in <u>Bird</u> and <u>Woods</u>. The ALJ also explained which aspects of the VA disability rating he was deviating from. Thus, remand is not warranted for further consideration of this issue.

## B.    Subjective Complaints

With regard to subjective complaints, the United States Court of Appeals for the Fourth Circuit has stated that "the determination of whether a person is disabled by pain or other symptoms is a two-step process." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996). The first step requires there to "be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Id.</u> (internal quotation omitted). During the second step the ALJ must expressly consider "the intensity and persistence of the claimant's [symptom] and the extent to which it affects her ability to work." <u>Id.</u> In making these determinations, the ALJ's decision "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at *10.[6] ALJs are further instructed to

> limit their evaluation to the individual's statements about his or her symptoms and the evidence in the record that is relevant to the individual's impairments. In evaluating an individual's symptoms, our adjudicators will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person. Rather, our adjudicators will focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the

---

[6] Effective March 28, 2016, SSR 96-7p was superseded by SSR 16-3p, 2016 WL 1119029. <u>See</u> 2016 WL 1237954 (correcting the effective date of SSR 16-3p to read March 28, 2016). The ALJ's decision in this matter post-dates the effective date of SSR 16-3p.

adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities . . . .

Id., at *11.

Further, "claims of disabling pain may not be rejected '*solely* because the available objective evidence does not substantiate [the claimant's] statements' as to the severity and persistence of [his] pain." Craig, 76 F.3d at 595 (citations omitted) (alteration in original). "This is not to say, however, that objective medical evidence and other objective evidence are not crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs [his] ability to work." Id. A claimant's subjective complaints "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the [symptoms] the claimant alleges [he] suffers." Id. The social security regulations inform claimants that in evaluating subjective complaints, the Commissioner will consider the following relevant factors:

(i)     Your daily activities;

(ii)    The location, duration, frequency, and intensity of your pain or other symptoms;

(iii)   Precipitating and aggravating factors;

(iv)   The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;

(v)    Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;

(vi)   Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

(vii)  Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3).

In this case, the ALJ summarized Stewart's hearing testimony as follows:

At the January 9, 2018, hearing, the claimant appeared and gave testimony, which was only partially supported by his medical evidence of record. The claimant lives alone in a second-floor apartment that he leaves two to three times per day and stated he "bears" with the problems using stairs to and from his apartment. The claimant testified his weight is stable at 225 pounds; he sits/lays in a sauna four to five times per week for back and neck pain; occasionally rides an exercise bicycle; consistently drives to the grocery store, gym and drives to other places; has a permanent disabled parking placard; and, suffers from gout that requires the use of a cane about five to six days per week. He alleges he has anxiety, depression, PTSD, neck pain, and back pain with reported numbness and loss of feelings in his fingers, arms, and legs; problems relating to others; lack of concentration, and racing thoughts. The claimant further testified that while he obtained a degree in information technology (IT) in 2016, he has not sought employment in that field due to various other interests including writing his second book, attending mental health appointments, temperament issues, and difficulty focusing. Regarding the claimant's military career, he testified he retired in January 2014, after serving 20 years. He was processed through the Army's physical disability evaluation system and found unfit for further military service. However, the Army Physical Evaluation Board assessed the claimant's unfitting conditions to only warrant[] separation with severance pay. The claimant rejected severance pay and accepted a length-of-service retirement. The claimant began receiving Veteran's Affairs (VA) disability benefits at 100% effective February 8, 2016. (Exhibit 6D). He reported degenerative disc disease in his neck for which he underwent laser spine surgery but continues to suffered from neck pain and numbness/tinging in his left arm. The claimant also reported back pain with a possibility of surgery; however, stated he would prefer not to undergo surgery. Regarding mental health symptoms, the claimant testified he sees a counselor once a month, which was down from twice a month due to interference with his many interests. The claimant further testified medications controlled his symptoms and only had adverse side effects of dizziness.

These activities are indicative of a fairly active and varied lifestyle and are not representative of a significant restriction of activities or constriction of interests that would preclude all work.

The claimant betrayed no evidence of any significant discomfort while testifying at the hearing. He also had no difficulty in participation in the hearing and was able to listen, maintain attention and concentration, and respond appropriately to questions. While the hearing was short-lived and cannot be considered a conclusive indicator of the claimant's overall level of functioning on a day-to-day basis, his appearance and demeanor during the hearing are given some weight in reaching the conclusion regarding the credibility of his allegations and residual functional capacity.

(Tr. 18-19.) The ALJ then proceeded to summarize and discuss Stewart's medical records, including Stewart's subjective reports, examination findings, treatment provided, diagnostic images and testing results, as well as the opinion evidence, and continued to address conflicts in the record. The ALJ ultimately found that Stewart's "statements concerning the intensity, persistence and limiting effects of [his alleged] symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." (Tr. 22-23.)

Stewart argues that the ALJ erred in failing to observe (1) that Stewart asked to stand during the hearing; (2) that a treatment record from Dillard in November 2015 noted Stewart was "in pain with a look of distress/depression on his face" (Tr. 316); and (3) that in describing Stewart's activities as "indicative of a fairly active and varied lifestyle" the ALJ failed to consider Stewart's testimony that he favored his right hand/arm or uses a stool for reaching at times because pain will radiate up his left shoulder and hand and he experiences numbness in his left fingers (Tr. 51-53). Stewart also appears to suggest that the ALJ improperly inserted his judgment, pointing out that the ALJ in summarizing Stewart's testimony observed that Stewart stated he may need lower back surgery but that Stewart stated he would prefer to do everything he can not to have that surgery. Stewart alleged that the ALJ implied Stewart's allegations were questionable in part on this basis, which was improper since the ALJ later summarized an April 2012 medical record indicating that at that time Stewart was not a surgical candidate.

After carefully considering Stewart's arguments and the record in this matter, the court finds that Stewart has failed to demonstrate that the ALJ's evaluation of Stewart's subjective complaints is unsupported by substantial evidence or controlled by an error of law. See Craig, 76 F.3d at 589 (defining "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be

somewhat less than a preponderance" and stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Blalock, 483 F.2d at 775 (indicating that regardless of whether the court agrees or disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence). The ALJ's decision reflects that he discounted Stewart's complaints, in part, because they were inconsistent with, contradicted by, or otherwise undermined by the record. See Hines v. Barnhart, 453 F.3d 559, 565 n.3 (4th Cir. 2006) (noting that a claimant's allegations "need not be accepted to the extent that they are inconsistent with available evidence"); Craig, 76 F.3d at 589-90 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . ."); cf. Lewis v. Berryhill, 858 F.3d 858, 866 (4th Cir. 2017) (finding "the ALJ's determination that objective medical evidence was required to support Lewis' evidence of pain intensity improperly increased her burden of proof"). Contrary to Stewart's arguments, the ALJ's decision reflects careful consideration of the medical evidence and the limitations stemming from Stewart's impairments. Further, the decision suggests consideration of the applicable factors in evaluating Stewart's subjective complaints. The ALJ's discussion reflects not just consideration of objective medical evidence but also Stewart's subjective reports to his medical sources as well as treatment methods and steps taken or not taken by Stewart as directed by his medical sources. Stewart's attempts to point to selective testimony or records that may support his subjective reports are insufficient to render the ALJ's determination unsupported by substantial evidence in light of all of the above factors and proper reasons offered by the ALJ to discount his

PJG

allegations of disabling limitations. To reiterate, the court may not substitute its judgment for the Commissioner's and finds that the ALJ's conclusions are within the bounds of the substantial evidence standard. See Craig, 76 F.3d at 589-90 ("Although a claimant's allegations about her pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers . . . ."); see also Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) (per curiam) (finding that the ALJ may properly consider inconsistencies between a plaintiff's testimony and the other evidence of record in evaluating the credibility of the plaintiff's subjective complaints).

## C.    Step Two

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "Basic work activities" means "the abilities and aptitudes necessary to do most jobs." Examples of these include:

(1)    Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)    Capacities for seeing, hearing, and speaking;
(3)    Understanding, carrying out, and remembering simple instructions;
(4)    Use of judgment;
(5)    Responding appropriately to supervision, co-workers and usual work situations; and
(6)    Dealing with changes in a routine work setting.

20 C.F.R. §§ 404.1522(b). "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation marks omitted).

At Step Two, the ALJ found that Stewart's degenerative disc disease of the lumbar and cervical spines, bilateral pes planus, gout, post-traumatic stress disorder (PTSD), depression, generalized anxiety disorder, and intermittent explosive disorder were severe impairments, but that Stewart's chronic obstructive pulmonary disease (COPD), hypertension, allergic rhinitis, and insomnia were nonsevere. (Tr. 15.) Stewart argues that the ALJ erred in failing to consider Stewart's prostatitis. Specifically, Stewart argues that a record from Dillard reflects Stewart's reports of urinary incontinence from prostatitis requiring adult diapers to be changed five times per day and that VA records note Stewart's prostatitis. Thus, Stewart argues it would be logical for Stewart to experience limitations from this impairment.

As a initial matter, the mere presence or diagnosis of a condition is insufficient to meet Stewart's burden at Step Two; rather, he must show how it significantly limits his ability to do basic work activities. See 20 C.F.R. § 404.1520(c); Bowen, 482 U.S. at 146 n.5; see also Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) ("Plaintiff's medical records establish the existence of her impairment, but the current record contains no evidence of how it significantly limits her physical or mental ability to do basic work activities."). Stewart's reliance on an isolated record mentioning issues stemming from his prostatitis is insufficient to demonstrate that the ALJ erred at step two. Notably, Stewart did not allege disability from this impairment in his application. Moreover, when questioned by the ALJ during his hearing about his medications, Stewart confirmed that he was taking Oxybutynin for urinary frequency and related to his prostatitis. Stewart further

explained that at one point he was getting up four or five times per night but the medication was helping with that issue as long as he was consistent with taking the medication, which he stated he was. (Tr. 62.)

Thus, reviewing the record as a whole, the record Stewart relies upon, standing alone, is insufficient to demonstrate that the ALJ's failure to explicitly discuss and find Stewart's prostatitis to be a severe impairment at Step Two requires remand. Moreover, the court finds that, even if the ALJ erred at Step Two, Stewart has failed to demonstrate any harm from this error, as a review of the decision reflects that the ALJ considered Stewart's impairments throughout the decision, and Stewart has failed to demonstrate that additional limitations were warranted based on this impairment. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."). Accordingly, Stewart has failed to demonstrate that remand is warranted for further consideration of this issue.

## RECOMMENDATION

For the foregoing reasons, the court finds that Stewart has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard. See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. The court therefore recommends that the Commissioner's decision be affirmed.

_Paige J. Gossett_

July 3, 2019
Columbia, South Carolina

Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

*The parties' attention is directed to the important notice on the next page.*

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'"   Diamond v. Colonial Life & Acc. Ins. Co., 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see  Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).